[No. 22834. Department One. April 16, 1931.]

J. B. T. MARTIN et al., Respondents, v. WESTINGHOUSE ELECTRIC AND MANUFACTURING COMPANY et al., Appellants.[1]

*Preston, Thorgrimson & Turner* and *Wakefield & Witherspoon,* for appellants.

*Farley, Young & Farley,* for respondents.

[1]Reported in 297 Pac. 1098.

MAIN, J.—This action was brought to recover for personal injuries and for property damage. The cause was tried to the court and a jury. At the conclusion of the plaintiffs' evidence, the defendants challenged the sufficiency thereof, and moved for a nonsuit, which motion was overruled. At the conclusion of all of the evidence the cause was submitted to the jury, and a verdict in favor of the plaintiffs in the sum of $4,924 was returned. Motion for new trial being made and overruled, judgment upon the verdict was entered, from which the defendants appeal.

The accident out of which the litigation arose happened at the intersection of Twenty-second avenue and Hatch street in the city of Spokane at about eleven-thirty p. m., November 21, 1929. Twenty-second avenue extends east and west; Hatch street north and south. The roadway on each street is graveled, and neither street is an arterial highway. At the southwest corner of the intersection there is an embankment about seven feet high. Hatch street, as it approaches the intersection from the south, has a descending grade of about five and one-half per cent.

Respondents J. B. T. Martin and wife, together with three others, were proceeding east on Twenty-second avenue in a Willys-Knight sedan owned by the respondents. Mr. Martin was driving, Floyd Coleman riding in the front seat with him, while in the rear seat were Mrs. Martin, Mrs. Coleman, and another lady. Mr. Martin testified that, as they approached the intersection, he slowed down to a speed of twelve or fourteen miles an hour, and, just before entering the intersection, he looked to the right and saw a car coming on Hatch street from that direction, the car being a little more than one hundred twenty feet from the center of the intersection, and too far away, as he then thought, to be of particular interest.

Mr. Martin proceeded to cross the intersection, driving just to the right of the center of Twenty-second avenue, at a speed of from twelve to fourteen miles an hour, and, as he crossed the intersection, he looked to the right and observed the lights of the autombile approaching on Hatch street. There was nothing to indicate to him that that car was proceeding at a greater speed than that fixed by law, and he had no appreciation that a collision was likely to occur until just an instant before the impact. Immediately after crossing the center line of Hatch street, the Willys-Knight was struck by the approaching car just past the middle of the right side, on the rear door. Mr. Martin testified that subsequent to the time he first saw the car approaching on Hatch street, he traveled a distance of thirty or forty feet, and that the Willys-Knight was approximately twelve feet long. When the collision occurred, the Willys-Knight was pushed at right angles to its forward movement at the time of impact, and was turned over on its left side. Mrs. Martin sustained severe injuries, and the Willys-Knight was badly damaged.

The appellants assign but one error, and that is the ruling of the trial court on their motion for a nonsuit. Whether the trial court erred in this respect depends upon whether Mr. Martin was guilty of contributory negligence, as a matter of law, in attempting to cross the intersection when the automobile on Hatch street was approaching on his right.

The speed limit across intersections is fifteen miles an hour; between intersections, twenty-five miles an hour. Rem. 1927 Sup., § 6362-3, subd. 2, 5. Whether Mr. Martin was guilty of contributory negligence depends upon whether he acted as a reasonably prudent man, being in the disfavored position, in attempting to cross the intersection while the other car was ap-

proaching on Hatch street. He had a right to assume that the approaching car would not exceed the speed limit fixed by law, and that, before entering the intersection, its speed would be reduced until it could cross the intersection at a speed not greater than that which was lawful. While the Willys-Knight was traveling thirty or forty feet at a speed of twelve or fourteen miles per hour, the other car had to travel a distance of one hundred twenty feet.

It cannot be held, as a matter of law, that there was not a reasonable margin of safety, nor that Mr. Martin failed to act as a reasonably prudent man in attempting to cross the intersection, because, if the other car had not been exceeding the speed limit in approaching the intersection, and in crossing the portion thereof which it traversed before the impact, the Willys-Knight would have had ample time to pass out of the intersection, and there would have been no collision. The question was one of fact for the jury.

In *Martin v. Hadenfeldt*, 157 Wash. 563, 289 Pac. 533, the facts are very similar to those in this case. The appellants say that no case could be more closely in point than that case. It must be remembered that there it was held that the question of whether the plaintiff, the driver in the disfavored position, was guilty of contributory negligence, was a question of fact for the jury, and not a question of law for the court. Construing Rem. 1927 Sup., § 6362-41, subd. 14, which provides that drivers, when approaching public highway intersections, shall look out for and give right of way to vehicles on their right simultaneously approaching a given point within the intersection, it was said:

"This provision is only a part of the rules of the road, and the various other statutory elements must, so far as applicable, be read into it, and, by so doing,

154

it seems to us that an instruction upon the subject should embody all of the following elements:

"(1) All rights of way are relative, and the duty to avoid accidents or collisions at street intersections rests upon both drivers.

"(2) The primary duty of avoiding such accidents rests upon the driver on the left, which duty he must perform with reasonable regard to the maintenance of a fair margin of safety at all times.

"(3) If two cars collide within the intersection, then they were simultaneously approaching a given point within the intersection, within the meaning of the statutes, unless—

"(4) The driver on the left assumes and meets the burden of producing evidence which will carry to the jury the question of fact as to whether or no the favored driver on the right so wrongfully, negligently, or unlawfully operated his car as would deceive a reasonably prudent driver on the left and warrant him in going forward upon the assumption that he had the right to proceed.

"This exception, or limitation, is perhaps best illustrated, by the familiar case, so often presented here (this particular case being a fair sample), of the driver on the left, as he approaches and is about to enter the intersection, seeing upon his right a car approaching, but at such a distance that, if driven within the lawful rate of speed, it cannot reach the intersection until he has safely passed. It is a well known fact that one looking to his right at an approaching car under such circumstances sees it coming toward him practically head-on, and oftentimes cannot judge accurately of its speed. The necessity for the constant moving of traffic and that the intersection be not blocked in either direction requires the driver on the left to decide almost instantly whether to proceed or stop. If, acting as a reasonably prudent man, he makes such observations as he can, and there is nothing to warn him that the car approaching on the right is so far exceeding the speed limit as to endanger his progress, he must necessarily proceed in order to facilitate traffic. But if, on the other hand, there is anything in the situation which would warn a reasonably prudent driver that the car

approaching on the right is out of control, or is so far exceeding the speed limit as to be actually within striking distance, then it is the duty of the driver on the left, notwithstanding the negligence and the violation of the law by the driver on the right, to yield the right of way in the interest of safety to all concerned.''

In that case, the driver in the disfavored position, as he was entering the intersection, saw two automobiles approaching on his right, approximately one hundred ninety feet distant, and he slowed down to a speed of three or four miles per hour, increasing his speed to twelve or fourteen miles per hour as he crossed the intersection. He was unable to estimate, with any degree of accuracy, the speed of the approaching automobiles; there was nothing to charge him with knowledge of their excessive speed. The collision occurred in the intersection. As already stated, it was held in that case that the question of whether the plaintiff was guilty of contributory negligence was for the jury. In the present case, Mr. Martin testified that, as the car he was driving was about to enter the intersection, he saw the other car approaching from the right a little more than one hundred twenty feet distant, and there was nothing to indicate to him that it was exceeding the lawful speed. There does not appear to us to be any substantial distinction between this case and the one above referred to.

The judgment will be affirmed.

TOLMAN, C. J., PARKER, MITCHELL, and HOLCOMB, JJ., concur.