[No. 23156.   Department Two.   August 5, 1931.]

EDWARD J. MURPHY, *Respondent*, v. HERMAN HUN-ZIKER *et al., Appellants.*[1]

[1]Reported in 2 P. (2d) 270.

*Reynolds, Ballinger, Hutson & Bolt,* for appellants.
*Padden & Moriarty,* for respondent.

FULLERTON, J.—This action arose out of an automobile collision at a street intersection. The respondent sued the appellants to recover for personal injuries and for damages to his automobile. The appellants made no counterclaim. The appellant Herman Hunziker owned and was driving the automobile that collided with the respondent's car. The appellant Jane Doe Hunziker was joined because of the marital relation; and the appellant Poole, because Herman Hunziker was in his employ and engaged in business for him at the time of the collision. For brevity, we shall hereafter refer to but one appellant, Herman Hunziker. The trial resulted in a verdict in favor of the respondent, and from a judgment on the verdict, this appeal was taken.

The assignments of error present two questions: (1) Whether the respondent, upon all of the evidence, was guilty of contributory negligence as a matter of law; and (2) Whether the court erred in refusing to give a requested instruction, which we shall later set out verbatim.

The accident occurred at the intersection of Dayton avenue and North 79th street in a residential district in the city of Seattle. Dayton avenue runs north and south, and North 79th street intersects it at right angles. Both streets are paved with concrete in the middle, the paving on each being twenty-five feet wide between the curbs; and both have concrete sidewalks bordering the property lines, and there are parking strips between the walks and the curbs.

There was competent evidence from which the jury

might reasonably have believed that the accident happened in the way we shall now describe. The respondent was driving west on the north side of North 79th street in an old Ford roadster, model T. The speed of the car, as it approached the intersection, was about fifteen miles per hour, which may have been reduced somewhat as the car was about to enter the intersection. At the northeast corner of the intersection, a dwelling house and some shrubbery in front of it so obstructed the view from North 79th street north along Dayton avenue that not until the respondent came within thirty feet of the east margin of Dayton avenue could he have seen any considerable distance north along the avenue. At that point, he could have seen north along the west side of the avenue about one hundred thirty feet, and along the east side about one hundred feet.

When he reached that point, he was looking for vehicles approaching from the north, and, seeing none, glanced south along Dayton avenue. Seeing no vehicle approaching from the south, he drove on into the intersection. When he was in the middle of the intersection, glancing to his right, he saw the appellant's automobile, about fifty feet away, coming toward him at high speed. He tried to accelerate the speed of his own car, and perhaps did accelerate it slightly; but the approaching car, with a skidding noise, curved westerly and struck the respondent's car when it was on the west line of the intersection. The impact was so violent that the force of it, combined with the momentum of the respondent's car, threw the respondent's car some thirty feet or more southwesterly onto the parking strip and curb on the south side of North 79th street, about thirty feet west of the west curb line of Dayton avenue, where it came to rest, turned end for end and upside down, with the respondent under it.

The appellant's car came to a stop on the parking strip on the west side of Dayton avenue about a car's length south of the south margin of North 79th street. To reach that place it had moved about thirty feet on the paving, mounted a curb five inches high and run along the parking strip twenty feet or more.

The appellant's car was an Essex coach, 1927 model, with two-wheel brakes. It had struck the respondent's car at the right rear end, coming from a northeasterly direction. Immediately after the accident, dirt and debris on the paving, shattered from the right rear fender of the respondent's car, indicated the point of impact; and from that point, extending on a curve to the left to a point just east of the middle of Dayton avenue and about ten paces from the point of impact, were dark streaks on the paving caused by the dragging of the locked rear wheels of the Essex. The front bumper of the Essex was sprung to the right, and the right front tire was deflated.

From the foregoing statement, it is clear that the accident would not have happened if the appellant had not been driving at an excessive speed, or if, instead of turning to his right as he approached and entered the intersection, he had turned to his left or even gone straight ahead.

The appellant contends, however, that the respondent also was guilty of negligence, in that he did not come to a still slower speed or stop still before he entered the intersection, and did not keep looking north along Dayton avenue until he came to the very margin of the avenue, and did not sound the horn as he approached the intersection. But we cannot say from the record, which we have examined thoroughly, that the jury was not justified in believing that the respondent did all that an ordinarily prudent driver would have done in the same or similar circumstances. It is

impossible, of course, for us to ascertain with precision just what the respondent did do. To ascertain that, was the function of the jury. They found by their verdict, under proper instructions covering all questions in dispute, that nothing the respondent failed to do contributed to cause the collision. By a motion for a new trial, the appellant submitted to the trial judge the contentions he now urges upon us, and the trial judge declined to disturb the verdict. He was in a far better position to weigh the evidence than we are, and we shall let his decision stand.

The requested instruction, the refusal to give which is assigned as error, reads as follows:

"You are instructed that if you find from the evidence in this case that the view of the plaintiff to his right was obstructed, a greater duty was imposed upon him by this fact, of slowing down his automobile and driving with caution, or even to stop until he could obtain a clearer view of 79th avenue to the north. It was his duty to sound a signal of his approach and to have his car under control when approaching the intersection, and failure on his part to do so would be negligence."

This would not have been a proper instruction to give a jury in this case. There was no evidence that the respondent did not enter the intersection with caution, nor were the circumstances such as to require him to stop before entering it, or to blow the horn, nor did it appear that he did not have his car under control. And in any event, the instructions that were given by the court fully and accurately informed the jury—even with some repetition—of the duties of a driver of an automobile in the disfavored position when approaching an intersection.

The judgment is affirmed.

TOLMAN, C. J., BEALS, MILLARD, and BEELER, JJ., concur.